ERNEST CAYLUS et al., Appellants, *v.* THE NEW YORK, KINGSTON AND SYRACUSE RAILROAD COMPANY, Impleaded, etc., Respondent.

Where a judgment has been obtained against a corporation for the price of goods sold an action cannot be maintained against it for fraud in obtaining a credit for the goods; the judgment for the purchase-price is as complete and full a remedy as would be a judgment for damages because of the fraud, and two judgments cannot be obtained against a corporation as an indemnity for the same loss.

(Argued February 31, 1879; decided February 18, 1879.)

THIS was an action of fraud against the New York, Kingston, and Syracuse Railroad Company, the directors thereof, and the Farmers' Loan and Trust Company of the city of New York. The facts alleged in the complaint are substantially as follows: The Rondout and Oswego Railroad Company was organized at some time before 1870, to construct a railroad from Rondout to Oneonta. About January, 1870, that company made bonds to the amount of $2,000,000, and to secure the payment of such bonds, executed a mortgage to the defendant, the Loan and Trust Company, upon all its franchises and property. It then proceeded with the construction of its road, and by January, 1872, had completed it to the distance of fifty-eight miles, but not to Oneonta, and to procure the means for the construction, it had issued all the bonds. Four hundred and forty thousand dollars of them were sold for money, and the balance, $1,560,000 of them were pledged to various parties as securities for obligations of the company. In January, 1872, the company entered into an agreement with the firm of Green & Co., by which, the firm agreed to complete the road to Oneonta, and to pay all the debts of the company, except its bonded debt, and the company agreed to deliver to them, all the bonds so pledged, and also to give them other considerations. They soon afterward with the assent of the railroad company, assigned this agreement to E. C. & E. B. Litchfield. The directors of the

railroad company then concluded that it would be for the advantage of the company and its bondholders to extend its road to Earlville, in Madison county, and they procured an act of the Legislature authorizing them to extend the road, and to change the name of the company to the New York, Kingston, and Syracuse Railroad Company. The directors about the same time made an agreement with the Litchfields, whereby the latter agreed to complete the road to Earlville, and the railroad company agreed to execute a mortgage upon its entire road, to secure $4,000,000 of its bonds, $2,000,000 of which were to be used to retire the bonds to that amount, before issued, and then outstanding, the remaining $2,000,000 were to be used for the purposes stated in the contract; and the Litchfields agreed to pay and discharge all the obligations of the company except the new mortgage bonds thus to be issued. This mortgage was executed to the Trust Company, and it was therein provided that $2,000,000 of the bonds secured thereby should be substituted for the $2,000,000 which had been first issued as above stated.

Thereafter in October, 1872, the plaintiffs sold to the Litchfields a large quantity of iron rails for the railroad for the aggregate price of $96,356.91, for which the Litchfields agreed to pay as follows: by delivering to them the promissory notes of the railroad company, payable in six months, indorsed by themselves, and as collateral to such notes, first mortgage bonds of the railroad company at 66 per cent of their par value. About the same time the directors of the railroad company resolved to issue $700,000 of the bonds secured by the second mortgage; they did issue, and delivered $147,000 of them to the Litchfields. These bonds were upon their face described as first mortgage consolidated bonds of the New York, Kingston and Syracuse Railroad Company, and were severally indorsed as follows: "New York, Kingston and Syracuse Railroad Company. $1,000. No. ――. Consolidated first mortgage gold bond." The Litchfields delivered these bonds with the notes to the plaintiffs, in pursuance of their agreement, for the iron rails. None of the bonds issued under the last mortgage were ever

used to retire any of the bonds issued under the first mort-gage, all of which remained outstanding. Nothing was done upon the road between Oneonta and Earlville, so that in fact the two mortgages practically covered the same property. Only two of the notes given to the plaintiffs were paid, and in October, 1873, they recovered against the railroad com-pany as makers, and the Litchfields as indorsers, a judgment for the balance, amounting to nearly $80,000, and they issued execution against all the defendants, but failed to col-lect anything, and the whole amount of their judgment remains due. The railroad company had made default in the payment of the interest due upon the bonds secured by the first mortgage, and a foreclosure of that mortgage had been commenced. It is alleged, in the complaint, that there will be no surplus to apply upon the bonds secured by the second mortgage. It is not alleged that any bonds were issued under the second mortgage but those held by the plaintiffs. It is alleged that the plaintiffs believed that the bonds delivered to them were first mortgage bonds, and that they took them relying upon the representation which they bore upon their face that they were such. It is also alleged that the defendants, the directors, were the directors during all the time herein mentioned, that they authorized the bonds now held by the plaintiffs to be issued in the form adopted, and that they then knew that they were in fact second mortgage bonds, and that the bonds issued under the first mortgage had not been exchanged or retired. There is no allegation in the complaint, that the railroad company was guilty of, or chargeable with, any fraud or wrong of any kind, and no judgment for damages is asked against it. A demurrer was interposed by the railroad company, which was sustained. *Held*, that, " upon the assumption that a sufficient cause of action, for a fraud committed by the directors, for which the company would be liable, is alleged, there could be no recovery against it for damages in this action on account of such fraud; for the reason that the plaintiffs have already a judg ment against it for the full amount due them on account of

the iron sold the Litchfields. That judgment covers the entire ground, and is as complete and full a remedy as any judgment for damages in this case as could be. A judgment in this case against the company could not be for any more, and would have no greater force. They cannot have two judgments against the company to indemnify themselves for the same loss."

Plaintiffs claimed and the complaint further alleged that at the time the directors resolved to make the second mortgage, and at the time they resolved to issue the $700,000 of bonds, they, the directors, or some of them were large holders of bonds issued under the first mortgage, but that the number of such bonds, and the persons by whom they are held, and the nature of the title under which they are held are unknown to them, the plaintiffs, and further that the directors, as holders of such bonds, have received the benefit of the iron rails sold by plaintiffs to the Litchfields, because such rails were used upon the road, and thus enhanced the value of the bonds held by them. There is no allegation that the railroad company owned or held any of the first mortgage bonds, or that it had any interest in any bonds except as obligor. The only prayer for judgment aside from a judgment against the directors for damages is as follows :

" That the defendants, and each of them, be forbidden by the order of this court from transferring or disposing of any of the bonds of the Rondout and Oswego Railroad Company now belonging to them, or either of them, or in the possession, or under the control of them, or either of them.

" And that the said defendants, and each of them, be required by the judgment of this court to surrender and deliver up any and all of the said bonds of the Rondout and Oswego Railroad Company belonging to them or under their control, and to accept, in substitution therefor, bonds for a like amount of the New York, Kingston and Syracuse Railroad Company, and that a receiver of the said bonds be appointed for that purpose."

*Held*, that " assuming that relief in substance, like that prayed for, could be granted in this action, it is not apparent

how it would aid the plaintiffs to have second mortgage bonds issued to the directors in the place of the first mortgage bonds held by them, leaving the plaintiffs with their second mortgage bonds. The only equitable relief appropriate to the plaintiffs' case, assuming that any could be granted, would be to postpone the first mortgage bonds held by the directors, to at least the extent of $147,000, to the bonds held by the plaintiffs, and the plaintiffs' bonds will then be just as good as if they were first mortgage bonds. For the purpose of granting such relief, the railroad company is not a necessary or proper party."

The judgment must be affirmed, with costs.

*E. Ellery Anderson* for appellants.

*S. W. Fullerton* for respondents.

EARL, J., reads for affirmance.
All concur.
Judgment affirmed.